# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4164-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

N.S.,

     Defendant,

and

C.V.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF N.J.S.
and K.V., minors.

_____

Submitted September 30, 2021 – Decided October 13, 2021

Before Judges Alvarez and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0028-20.

Joseph E. Krakora, Public Defender, attorney for appellant (Deric Wu, Assistant Deputy Public Defender, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant C.V. appeals from a June 30, 2020 judgment terminating his parental rights in N.J.S. and K.V., then ten and seven years of age. Following a four-day trial in which C.V. refused to appear, Judge Nina C. Remson rendered a seventy-five-page written opinion finding the New Jersey Division of Child Protection and Permanency (Division) met by clear and convincing evidence all four prongs of N.J.S.A. 30:4C-15.1(a).[1] We affirm.

---

[1] On July 2, 2021, the Legislature enacted L. 2021 c. 154, amending N.J.S.A. 30:4C-15.1(a) pertaining to the standards for terminating parental rights. Specifically, the Legislature amended N.J.S.A. 30:4C-15.1(a)(2), to exclude from consideration the harm to a child caused from being removed from resource

We briefly summarize the facts adduced at trial, which included written evidence and testimony from an adoption caseworker and a psychological expert on behalf of the Division. The Law Guardian also offered testimony from K.V.

The Division has worked with family since 2010. Since then it received numerous referrals pertaining to C.V.'s and the biological mother N.S.'s abuse of alcohol and drugs (marijuana and cocaine) in the children's presence and

---

parents as a factor in a termination of parental rights case. N.J.S.A. 30:4C-15.1(a) now reads as follows:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

The Division must prove all four prongs by clear and convincing evidence. In re Guardianship of J.C., 129 N.J. 1, 10 (1992). C.V. does not challenge the judge's prong two findings.

A-4164-19

while caring for the children. Both parents lacked stable housing and engaged in domestic violence. Throughout the Division's nearly decade of involvement leading to its filing of the guardianship complaint in June 2019 and beyond, the Division deployed a battery of services to achieve family reunification. However, each parent failed to comply with services. Additionally, C.V. engaged in criminal conduct which led to his frequent incarceration. Each parent violated court orders relating to supervised visitation and orders intended to protect the children from domestic violence. C.V. failed to exercise regular visitation despite the fact he was afforded visitation during his incarcerations and after his release. He also did not maintain contact with the Division and lacked a credible plan to care for the children.

The judge found the parents' failures led N.J.S. to experience "four removals, three failed reunifications with N.S., and a total of twelve placements in foster homes. K.V. has had three removals from N.S., two failed reunifications with N.S., and has lived in ten different resource homes."[2] The children exhibited behavioral issues, including violent behavior and thoughts of self-harm, which only abated once they were placed in their current resource home.

---

[2] Since K.V.'s birth, the children have been placed together in the same homes.

A-4164-19

The judge credited the caseworker's testimony which "described the resource home as a very positive environment. Both resource parents have their Masters in Special Education and have worked with the children on their feelings and reactions to situations, like missed visitations." The children also identify the resource parents' three biological children as their siblings and participate in the family's activities. The children told the caseworker, the Law Guardian, their therapist, and CASA worker they wish to be adopted by the resource parents with whom they feel safe and secure. The resource parents wish to adopt.

The judge found the Division's expert credible. The expert performed psychological evaluations of N.S. and C.V. and conducted bonding evaluations of the children with each parent and the resource parents. The judge noted the expert's finding that neither N.S. nor C.V. was able to safely parent the children alone or as a couple and

> the children had been harmed by the multiple placements and broken attachments. [The expert] noted . . . that the substance abuse, domestic violence[,] and instability have led to the children having insecure attachments. . . . [They] cannot depend on either of their parents due to failed reunifications and inconsistent visitations. They are both at risk for severe behavioral and emotional problems and desperately need permanency.

5

The judge credited the expert's testimony that reunifying the children with C.V. would place them "at an untenable level of risk . . . [because C.V.] cannot provide stability for himself, let alone two children . . . [and lacked] a realistic idea of the children's needs." She accepted the expert's testimony that while the children had an attachment to C.V., it was "insecure" and "anxious" because they could not rely on his presence in their lives due to his incarcerations and failure to attend visitation. She also credited the expert's conclusion "that this could cause the children to be at risk for anxiety disorders, insecurities, and poor self-esteem . . . ."

The judge noted the expert found the children were bonded with the resource parents who were "highly attuned to the[ir] emotional needs . . . and the children displayed behavior consistent with a 'strong secure attachment' to the resource parents. [The expert] opines that reunification with either parent would result in 'severe and enduring harm' to the children."

The judge also recounted K.V.'s testimony and found her credible. K.V. explained she wanted to remain with the resource family and her second choice was to return to a prior resource placement. The judge noted "she did not have a third choice on where she wanted to live."

6

The judge found the Division proved all four statutory prongs by clear and convincing evidence. She concluded C.V.'s "substance abuse issues, unstable housing, domestic violence issues, and abandonment due to his criminal activity" harmed and would continue to harm the children. She found C.V. failed to ameliorate the harm despite the Division's commitment of resources and "failed to provide minimal parenting to the children and has abandoned them to the care of others. This has caused the children to remain in foster care for a majority of their lives, to move from placement to placement, and to lack a safe, stable, and permanent home."

The judge found the Division proved the second prong because the parents "have had over eight years to eliminate the harm to the children and both parents have been unable or unwilling to do so." She noted C.V. continued to engage in criminality, had neither completed substance abuse evaluations nor treatment, failed to maintain contact with the Division, and "had minimal contact with the children as well." She found "[t]his abandonment has caused the children to be moved from placement to placement, which has caused the children harm." The judge concluded C.V. "pose[d] a substantial risk of harm to [the children]."

Addressing the third prong, the judge found the litany of services provided to C.V. and the Division's efforts to place the children with relative caregivers

met the Division's burden. The judge also noted the resource parents wished to adopt and therefore kinship legal guardianship was not an option. N.J. Div. of Youth & Fam. Servs. v. P.P., 180 N.J. 494, 509-10 (2004).

The judge concluded the Division proved prong four because neither N.S. nor C.V. could parent the children or ameliorate the harms suffered by them, and the children lacked a secure bond with either parent. On the other hand, the judge concluded the children

> do have a strong, secure attachment with the resource parents, who are committed to adopting the children and would be able to ameliorate the harm caused by severing the biological parents' rights to the children. Terminating the parental rights of C.V. and N.S. will afford the children the permanency and stability they need and deserve and will provide them with the best opportunity to develop into emotionally healthy and productive adolescents and adults.

C.V. raises the following point on appeal:

> I. Termination of Parental Rights Will Do [More] Harm Than Good and Unnecessarily Ended the Children's Bond to Their Father.

Appellate review in termination of parental rights cases is limited. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to the factual findings underlying the trial court's decision if they are supported by "adequate, substantial, and credible evidence" on the record. N.J. Div. of Youth

8

& Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Reversal is warranted if the court's findings are "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App Div. 2012) (citing M.M., 189 N.J. at 279).

The fourth prong of N.J.S.A. 30:4C-15.1(a)(4) serves as a "'fail-safe' inquiry guarding against an inappropriate or premature termination of parental rights." F.M., 211 N.J. at 453 (citing N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 609 (2007)).

> [T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties. The question to be addressed under that prong is whether, after considering and balancing the two relationships, the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents.
>
> [In Re Guardianship of K.H.O., 161 N.J. 337, 355 (1999).]

"The crux of the fourth statutory subpart is the child's need for a permanent and stable home, along with a defined parent-child relationship." N.J. Div. of Youth & Fam. Servs. v. H.R., 431 N.J. Super. 212, 226 (App. Div. 2013) (citing N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 119 (App. Div. 2004)). "If one thing is clear, it is that the child deeply needs association with a nurturing adult. Since it seems generally agreed that permanence in itself is an important part of that nurture, a court must carefully weigh that aspect of the child's life." N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 610 (1986) (citing Alsager v. Dist. Ct. of Polk Cnty., 406 F. Supp. 10, 23-24 (S.D. Iowa 1975)). Therefore, "to satisfy the fourth prong, the State should offer testimony of a 'well qualified expert who has had full opportunity to make a comprehensive, objective and informed evaluation' of the child's relationship with both the natural parents and the foster parents." M.M., 189 N.J. at 281 (quoting J.C., 129 N.J. at 19).

"It has been 'suggested that [a] decision to terminate parental rights should not simply extinguish an unsuccessful parent-child relationship without making provision for . . . a more promising relationship . . . [in] the child's future.'" N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 108 (2008) (quoting A.W., 103 N.J. at 610) (alterations in original). "[C]ourts have recognized that

terminating parental rights without any compensating benefit, such as adoption, may do great harm to the child."  Id. at 109 (citing A.W., 103 N.J. at 610-11).

C.V. challenges the judge's prong four findings arguing a termination of his parental rights will do more harm than good.  He contends the judge ignored the bond he had with the children, which was evidenced by the fact his visitations with the children were positive.

Having thoroughly reviewed the record under our standard of review and the applicable law, we conclude C.V.'s arguments lack sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).  Judge Remson's prong four findings considered the children's relationship and bond with C.V. and the resource parents.  The judge also weighed the children's need for permanency against the harm caused by termination.  The judge's factual findings relied on extensive documentary evidence and testimony and are based on sufficient credible evidence, and in light of those findings, her legal conclusions are unassailable.  Her decision terminating C.V.'s parental rights is in the children's best interests and amply supported by the record.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION